[No. 84240-0. En Banc.]
Argued May 10, 2011. Decided September 15, 2011.

THE STATE OF WASHINGTON, *Petitioner*, v. JOHN CALDWELL
GORDON, *Respondent*.

THE STATE OF WASHINGTON, *Petitioner*, v. CHARLES ANDREW
BUKOVSKY, *Respondent*.

672

*Charles A. Bukovsky*, pro se.

*Mark E. Lindquist, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for petitioner.

*Kathryn A. Russell Selk* (of *Russell Selk Law Office*), for respondent Gordon.

*Eric J. Nielsen* and *David B. Koch* (of *Nielsen, Broman & Koch PLLC*), for respondent Bukovsky.

674

¶1 STEPHENS, J. — John Gordon and Charles Bukovsky were each charged with second degree murder in the beating death of Brian Lewis. The State also sought two aggravating sentencing factors: deliberate cruelty and particular vulnerability of the victim. The jury was instructed to determine whether the aggravators were present, but the instructions did not define "deliberate cruelty" or "particular vulnerability." The defendants did not object to the instructions on that basis. The jury found the defendants guilty and also found the aggravators applied. The trial court imposed exceptional sentences. We must decide whether the failure to provide detailed instructions defining the meaning of "deliberate cruelty" or "particular vulnerability" is a manifest error of constitutional magnitude that may be addressed for the first time on appeal. We hold that it is not and therefore reverse the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

¶2 In the early morning hours of September 5, 2006, Brian Lewis intervened in a fight between Gordon and a woman. A verbal confrontation between Lewis and Gordon escalated when Gordon hit Lewis in the face. As Lewis tried to run, he struck one of Gordon's friends, Anthony Knoefler. Gordon then punched Lewis several times, causing him to fall to the ground. Knoefler kicked Lewis in the head. Gordon and Bukovsky began punching and kicking Lewis while he was on the ground. A fourth man, Jesie Puapuaga, arrived and put Lewis in a choke hold while Gordon and Bukovsky continued kicking Lewis. The men dispersed when Knoefler saw a car coming and yelled that it might be police. Witnesses to the beating called law enforcement, and an ambulance arrived. While in the ambulance, Lewis

suffered cardiac arrest and died about six minutes before the ambulance reached the hospital.

¶3 On September 7, 2006, Gordon and Bukovsky were each charged with one count of murder in the second degree.[1] On July 10, 2007, the State amended their respective informations to allege two aggravating circumstances: deliberate cruelty and particular vulnerability of the victim.

¶4 At trial, the State offered the following jury instruction with regard to the deliberate cruelty aggravator:

> For purposes of special verdict Question One the State must prove beyond a reasonable doubt that the defendant's conduct during the commission of the offense manifested deliberate cruelty to the victim.

Br. of Resp't, App. B (Jury Instruction 32). As to particular vulnerability the offered jury instruction read:

> For purposes of special verdict Question Two the State must prove beyond a reasonable doubt that the defendant knew or should have known that the victim of the offense was particularly vulnerable or incapable of resistance.

*Id.* (Jury Instruction 33). The defendants objected to the particular vulnerability instruction as being inapplicable to the case but did not object to the language of the jury instructions, nor did they propose alternative instructions.

¶5 The jury found the defendants guilty of murder in the second degree, and found the presence of the aggravating circumstances. Given the aggravating circumstances, the State sought and the court imposed an exceptional sentence. The defendants appealed through separate counsel and filed separate briefing, though the Court of Appeals decided their cases together. The Court of Appeals con-

---

[1] Knoefler pleaded guilty and testified for the State at Gordon and Bukovsky's trial. Puapuaga's case was severed when he filed an interlocutory appeal to this court, *State v. Puapuaga*, 164 Wn.2d 515, 192 P.3d 360 (2008). Br. of Resp't at 3. He entered a guilty plea in 2009, following his unsuccessful appeal.

cluded that the failure to instruct on the legal elements of "deliberate cruelty" and "particular vulnerability" constituted an error of constitutional magnitude that could be raised for the first time on appeal and that the error was not harmless. *State v. Gordon*, 153 Wn. App. 516, 521, 223 P.3d 519 (2009). Accordingly, it vacated the defendants' exceptional sentences.

¶6 The State sought review, which we granted. *State v. Gordon*, 169 Wn.2d 1011, 236 P.3d 896 (2010).

## ANALYSIS

¶7 Generally, an appellate court may refuse to entertain a claim of error not raised before the trial court. RAP 2.5(a). An exception exists for a claim of manifest error affecting a constitutional right. *Id.* In order to benefit from this exception, "the appellant must 'identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights at trial.'" *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009) (alteration in original) (quoting *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007)). A constitutional error is manifest if the appellant can show actual prejudice, i.e., there must be a " 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" *Id.* at 99 (alteration in original) (internal quotation marks omitted) (quoting *Kirkman*, 159 Wn.2d at 935). If an error of constitutional magnitude is manifest, it may nevertheless be harmless. *Id.* The burden of showing an error is harmless remains with the prosecution. *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) (establishing State's burden to show harmless error beyond a reasonable doubt).[2]

---

[2] To elaborate on the distinction between a manifest error and a harmless error, a manifest error is "so obvious on the record that the error warrants appellate review." *O'Hara*, 167 Wn.2d at 100. It is the defendant's burden to identify this type of error, but it is not the defendant's burden to also show the error was

*Constitutional Magnitude*

 ¶8 For the purposes of RAP 2.5(a), a manifest error must be of constitutional magnitude. Here we are concerned with instructional error. Jury instructions must "properly inform the jury of the applicable law, not mislead the jury, and permit each party to argue its theory of the case." *State v. Bennett*, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007). The failure to instruct a jury on every element of a charged crime is an error of constitutional magnitude. *State v. Aumick*, 126 Wn.2d 422, 429, 894 P.2d 1325 (1995); *State v. Scott*, 110 Wn.2d 682, 689, 757 P.2d 492 (1988) (quoting *State v. Ng*, 110 Wn.2d 32, 44, 750 P.2d 632 (1988)). However, "[a]s long as the instructions properly inform the jury of the elements of the charged crime, any error in further defining terms used in the elements is not of constitutional magnitude." *State v. Stearns*, 119 Wn.2d 247, 250, 830 P.2d 355 (1992). "Even an error in defining technical terms does not rise to the level of *constitutional* error." *Id.* (emphasis added).

¶9 The question of whether instructions that do not elaborate on the meaning of "deliberate cruelty" or "particular vulnerability" constitute an error of constitutional magnitude turns on whether the lacking explanation is akin to an element or, instead, the explanation merely defines terms within an element. The defendants argue that "[i]nstructions indicating the necessary elements of proof for these aggravating circumstances serve the same critical role as 'to convict' instructions for substantive crimes." Suppl. Br. of Resp't Bukovsky at 10. Hence, the defendants argue, "[t]he Court of Appeals properly distinguished the failure to include an element of the State's proof in the jury instructions from the situation where all elements are included in the instructions, but the trial court fails to

harmful. Once the error is addressed on its merits, the State bears the burden to prove the error was harmless under the *Chapman* standard.

further define those elements." *Id.* at 6.[3] The former situation is an error of constitutional magnitude.

¶10 In contrast, the State criticizes the Court of Appeals for "conclud[ing] that if an aggravating circumstance is the equivalent of 'an element,' then failure to further define terms contained within the aggravating circumstance is an issue of constitutional magnitude." Suppl. Br. of Pet'r at 9.

¶11 The State is correct. The Court of Appeals reasoning follows *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), believing that "the alleged error here can be fairly characterized as failing to properly instruct on an element of the aggravated crime." *Gordon*, 153 Wn. App. at 534. In *Apprendi*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. *Ring* affirmed this sentiment two years later, holding that "facts which are necessary to impose a greater sentence are ' "the functional equivalent of an element of a greater offense." ' " *State v. Mills*, 154 Wn.2d 1, 9, 109 P.3d 415 (2005) (quoting *Ring*, 536 U.S. at 609 (quoting *Apprendi*, 530 U.S. at 494 n.19)). We have followed suit, holding that aggravating factors must be proved to the jury just as the elements of the underlying offense must be proved to the jury. *See State v. Powell*, 167 Wn.2d 672, 684, 223 P.3d 493 (2009); *id.* at 689 (Stephens, J., concurring) ("Any facts justifying a sentence above an offense's standard sentencing range are functionally equivalent to elements of the crime."); *id.* at 691 (Owens, J., dissenting) ("Aggravating Circumstances Are Essential Elements of a Crime").

---

[3] Although Gordon and Bukovsky filed separate briefs, each addressing the main issue regarding constitutional error in this case, their arguments are similar enough to allow this opinion to refer to them and their arguments collectively.

¶12 But this case does not involve a *Powell* error, and the State is correct that *Apprendi* and *Ring* have little bearing on the question here. *Powell* concerned the proper procedure for resentencing to correct an error under *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and also the question of whether aggravating sentencing factors must be included in an information. *Powell*, 167 Wn.2d at 677-78, 681. Likewise, *Apprendi* and *Ring* required that a jury, not a judge, determine whether the defendant's actions warrant an exceptional sentence. *Apprendi*, 530 U.S. at 490; *Ring*, 536 U.S. at 609.

¶13 None of these questions are implicated here. A jury was presented with the aggravating factors and determined them to be present. Importantly, *Apprendi*, *Ring*, and *Powell* do not dictate the level of detail required in an instruction setting forth such factors. The statute containing the aggravating factors charged here, RCW 9.94A.535(3), does not define or elaborate on the meaning of "deliberate cruelty" or "particular vulnerability" any further than the instruction here did. The statute reads:

> Except for circumstances listed in subsection (2) of this section, the following circumstances are an exclusive list of factors that can support a sentence above the standard range. Such facts should be determined by procedures specified in RCW 9.94A.537.[4]
>
> (a) The defendant's conduct during the commission of the current offense manifested deliberate cruelty to the victim.
>
> (b) The defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance.

RCW 9.94A.535(3). The applicable law is as the legislature stated it in RCW 9.94A.535(3). The jury instructions captured the meaning of the statute. Further elaboration in the

---

[4] RCW 9.94A.537 establishes procedural requirements, including that aggravating circumstances be presented during trial and proved to a jury beyond a reasonable doubt. The defendants do not challenge the State's presentation of the aggravating circumstances under this statute.

instructions would have been in the vein of definitional terms, and the omission of such definitions is not an error of constitutional magnitude satisfying the RAP 2.5(a) standard. *Stearns*, 119 Wn.2d at 250. Because we hold that there was no error of constitutional magnitude here satisfying RAP 2.5, we need not consider whether the alleged error was manifest or harmless.

¶14 Gordon and Bukovsky also argue there was insufficient evidence to impose the aggravating circumstances. We disagree. "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Here, Lewis was outnumbered three to one when the beating that killed him commenced; at the end, he was outnumbered five to one. Witnesses testified that given the number of assailants, Lewis was unable to fight back or defend himself in any way. A jury could reasonably conclude that Lewis's vulnerability—as a solitary victim—was a substantial factor in the commission of the crime, a vulnerability of which his assailants were aware by virtue of the fact that they placed him in that situation. *See State v. Suleiman*, 158 Wn.2d 280, 291-92, 143 P.3d 795 (2006) (observing that particular vulnerability requires that (1) "the defendant knew or should have known (2) of the victim's *particular* vulnerability and (3) that vulnerability must have been a substantial factor in the commission of the crime").

¶15 Likewise, the jury here could reasonably conclude that the defendants acted with deliberate cruelty. "Deliberate cruelty" requires a showing "of gratuitous violence or other conduct that inflicts physical, psychological, or emotional pain as an end in itself. ... [T]he cruelty must go beyond that normally associated with the commission of a charged offense or inherent in the elements of the offense." *State v. Tili*, 148 Wn.2d 350, 369, 60 P.3d 1192

(2003) (citation omitted). Lewis was already on the ground when the defendants put him a choke hold and continued hitting him. They stomped on his head and kicked him repeatedly, although their punches had already felled him. In light of this particularly savage beating, we cannot say the jury rested its verdict on insufficient evidence when it found the defendants acted with deliberate cruelty.

¶16 Gordon and Bukovsky further argue they received ineffective assistance of counsel because, trial counsel failed to request a jury instruction in line with the *Washington Pattern Jury Instructions*, which do convey the level of detail the defendants argue was lacking here. *See* 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 300.10 (3d ed. 2008) (WPIC) (deliberate cruelty); WPIC 300.11 (particularly vulnerable victim). While the better practice may be to request the pattern instructions when faced with aggravators such as these, we cannot say that the defendants were prejudiced by their trial counsel's failure to request more detailed instructions on the aggravating circumstances. *See State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011) (noting that an ineffective assistance of counsel claim requires a showing of deficient performance and prejudice, i.e., a showing " 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable' " (quoting *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987))). Accordingly, we reject the defendants' claim of ineffective assistance of counsel.

## CONCLUSION

¶17 The defendants have not shown that there was an error of constitutional magnitude that allows them to challenge jury instructions for the first time on appeal. Accordingly, we refuse to address their claim of instructional error under RAP 2.5(a). The evidence was sufficient to sustain the defendants' convictions for second degree

murder, and they have not demonstrated ineffective assistance of counsel. We reverse the Court of Appeals and affirm the convictions.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and WIGGINS, JJ., concur.