FILED
COURT OF APPEALS
DIVISION II

2014 MAY 13 AM 9: 15

STATE OF WASHINGTON
BY
DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44221-3-II |
| Respondent, | |
| v. | |
| DUANE ALLEN MOORE, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J.—Duane Moore appeals his conviction and sentence for second degree assault, domestic violence, after choking his wife during an argument. He argues that (1) the prosecutor committed misconduct during voir dire and closing argument when he argued facts not in evidence, made improper statements about witness credibility, and shifted the burden of proof; (2) the trial court erred when it allowed a witness to testify with a service dog; and (3) the prosecutor improperly testified at the sentencing hearing. In a statement of additional grounds (SAG), Mr. Moore alleges misconduct from an interaction between a trainee bailiff and a witness. Finding no error, we affirm.

## FACTS

On July 22, 2012, when the Bremerton police responded to a domestic violence call, they found Sabrina Moore "crying hysterically." 1 Report of Proceedings (RP) at 151. She stated that during an argument with her husband, Mr. Moore, he threw a plastic tea bottle at her back. He then followed her onto the porch, backed her up against the railing, and choked her. Mr. Moore put one arm in front of Ms. Moore's throat and one arm behind it. A neighbor witnessed the incident and intervened. Mr. Moore fled the scene in a friend's car. Ms. Moore had a red mark on her throat.

The State charged Mr. Moore with second degree assault with a domestic violence special allegation. At trial, Ms. Moore testified that Mr. Moore had choked her. Two neighbors testified that they witnessed the Moores arguing when Mr. Moore grabbed Ms. Moore, hit her, and placed an arm on her throat. Mr. Moore admitted to arguing with Ms. Moore but denied touching her.

Prior to Ms. Moore's testimony and outside the presence of the jury, the State moved the court for permission to have a service dog accompany Ms. Moore on the witness stand. The prosecutor advised the court that Ms. Moore was nervous and scared about testifying and that defense counsel had no objections.

During voir dire, a prospective juror opined that "beyond a reasonable doubt" did not mean absolute certainty and that the jury would not get all the facts. 1 RP at 99. The prosecutor responded by saying the jurors were in a difficult position because "we know more about the case than you do." 1RP at 100. Mr. Moore did not object.

Also, during voir dire, the prosecutor asked the jurors how they would prove that the world is round. The jurors gave examples of information they would use to prove the world's shape. The prosecutor then asked, "Is it fair for me to say that you're satisfied beyond a reasonable doubt based on a common sense appreciation of the facts; is that correct?" 1 RP at 106. The prosecutor relied on this semi-analogy again in closing argument and asked the jurors to look at all of the testimony to see if it made sense. He suggested that the jury evaluate the evidence and the credibility of the witnesses to determine if a physical confrontation occurred, stating, "[Y]ou can be satisfied beyond a reasonable doubt [that Mr. Moore is guilty of second degree assault] based on a common sense appreciation of the facts." 2 RP at 224. Mr. Moore did not object.

The jury found Mr. Moore guilty as charged. At the sentencing hearing, Ms. Moore did not appear because, as the prosecutor stated, she was "extremely traumatized" by the event and she feared Mr. Moore because of a "long history of domestic violence." RP (Nov. 16, 2012) at 3. The prosecutor then informed the court that Ms. Moore's teeth were chattering before she testified at trial and that he had never seen a victim so scared to testify. Mr. Moore objected to the prosecutor stating this opinion. The court overruled Mr. Moore's objection. Ms. Moore submitted a written statement which the court read silently but did not make a part of the record. Mr. Moore requested an exceptional sentence below the standard range.

When sentencing Mr. Moore, the court stated its reasoning for imposing a mid-range 62-month sentence was based on "the severity of the crime, your criminal history and because I, in fact, heard the victim and I don't find that it was de minimis so I don't find there's a basis for an exceptional sentence downward." RP (Nov. 16, 2012) at 35. Mr. Moore appeals.

## ANALYSIS

### I.    PROSECUTOR ERROR

Mr. Moore argues that the prosecutor committed misconduct by arguing facts not in evidence, implying that the jury's job is to convict if it finds the State's witnesses more credible than the defendant, and misstating its burden of proof. We hold that the prosecutor did not commit misconduct.

"In order to prevail on a claim of prosecutorial misconduct, a defendant is required to show that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). We review a prosecutor's remarks during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and

the jury instructions. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). It is proper argument that the evidence fails to support the defense's theory. *State v. Russell*, 125 Wn.2d 24, 87, 882 P.2d 747 (1994).

### A.    Arguing Facts Not in Evidence

First, Mr. Moore contends that the prosecutor's statement during voir dire that the jurors were in a difficult place because "we know more about the case than you do" was improper because it argued facts not in evidence. 1 RP at 100. But the prosecutor's comments during voir dire were not evidence; therefore, he did not argue facts not in evidence. And the trial court instructed the jury that the lawyers' statements were not evidence.

### B.    Credibility

Mr. Moore next argues that the prosecutor committed misconduct when he implied that the jury must convict if it finds the State's witnesses more credible than the defendant. The prosecutor merely argued that the evidence supported the State's theory, not the defendant's theory, and that the jury should weigh credibility. Both arguments are proper topics for closing argument. *See Russell*, 125 Wn.2d at 87 (it is not misconduct to argue that the evidence fails to support the defendant's theory); *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004) (witness credibility is a jury question).

### C.    Burden of Proof

Lastly, Mr. Moore argues that the prosecutor misstated the burden of proof by using an analogy to describe reasonable doubt and by encouraging the jury to use common sense. We disagree.

A prosecutor's use of an analogy to explain the beyond a reasonable doubt standard is reviewed on a case-by-case basis. *State v. Fuller*, 169 Wn. App. 797, 825, 282 P.3d 126 (2012),

*review denied*, 176 Wn.2d 1006 (2013). When the State uses an analogy that equates its burden of proof to making an everyday choice or quantifies the level of certainty necessary to satisfy the beyond a reasonable doubt standard, it commits misconduct. *Fuller*, 169 Wn. App. at 827; *see also State v. Anderson*, 153 Wn. App. 417, 431, 220 P.3d 1273 (2009); *State v. Johnson*, 158 Wn. App. 677, 684, 243 P.3d 936 (2010). Where, as here, the State does not minimize its burden of proof or shift the burden of proof to the defendant, there is no misconduct. *Fuller*, 169 Wn. App. at 826 (citing *State v. Curtiss*, 161 Wn. App. 673, 700-01, 250 P.3d 496 (2011)).

Additionally, the State properly argued the law of the case by telling the jury it could use common sense in assessing the evidence and the witnesses. The trial court instructed the jurors that they must consider all admissible evidence and that they have a duty to assess the credibility of the witnesses and weigh the evidence. Within the context of closing argument, the prosecutor's statement about "a common sense appreciation of the facts" was not misconduct. 2 RP at 224. After making that statement, the prosecutor further argued that the State's witnesses corroborated each others' testimony and that their testimony "ma[de] sense" while defendant's testimony was not supported by the evidence. 2 RP at 224. The prosecutor was referencing the evidence presented and urging the jury to find Mr. Moore guilty based on that evidence. This was not improper.

Because we hold that Mr. Moore has failed to establish any misconduct, we affirm the trial court.

II.   SERVICE DOG

For the first time on appeal, Mr. Moore argues that the trial court erred by allowing the service dog to be present in court with Ms. Moore. He first argues that, by doing so, the trial court improperly commented on the evidence. He then posits his confrontation and due process

5

rights were violated by the dog's presence. Because Mr. Moore failed to raise these issues at trial, he has failed to preserve this issue.

We will not review an argument raised for the first time on appeal unless the challenging party demonstrates a manifest constitutional error. RAP 2.5(a)(3). An error is manifest if it is so obvious on the record that the error requires appellate review. *State v. O'Hara*, 167 Wn.2d 91, 99-100, 217 P.3d 756 (2009). The defendant must show actual prejudice, meaning the alleged error had practical and identifiable consequences at trial. *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011).

Here, Mr. Moore fails to prove that any alleged errors were manifest. There is no evidence in the record that the dog's presence made Ms. Moore appear traumatized or victimized, and thereby violated Mr. Moore's due process rights, or acted as a comment on the evidence. *See State v. Dye*, 178 Wn.2d 541, 555, 309 P.3d 1192 (2013) (holding that the court's decision to allow a service dog was reasonable and that there was no evidence on the record that the dog made the victim witness appear "pitiful to the jury and 'presupposed the victimhood of the complainant'"). It is the responsibility of the party alleging error to make a record of that error. *Dye*, 178 Wn.2d at 556. Additionally, Division One of this Court rejected a similar confrontation clause argument, holding that confrontation clause case law was inapposite because the dog's presence does not prevent face-to-face confrontation with the witness. *State v. Dye*, 170 Wn. App. 340, 346, 283 P.3d 1130 (2012), *aff'd by Dye*, 178 Wn.2d 541. We therefore reject Mr. Moore's argument and affirm the trial court.

III.   SENTENCING

Finally, Mr. Moore argues that the prosecutor violated the real facts doctrine and Mr. Moore's due process rights by testifying on Ms. Moore's behalf at sentencing. Because Mr.

Moore received a sentence within the standard range, he cannot appeal his sentence. RCW 9.94A.530(1); RCW 9.94A.585(1); *State v. Williams*, 149 Wn.2d 143, 146, 65 P.3d 1214 (2003). Therefore, the argument on the "real facts doctrine" is moot.

IV.   SAG

In his SAG, Mr. Moore argues bailiff misconduct, judicial misconduct, and ex parte communications arising from an incident where the trainee bailiff realized she recognized Ms. Moore. Because there was no prejudice, we disagree.

The bailiff at trial was training a new bailiff. Before the second day of testimony, the bailiff and trainee were standing in the hallway when Ms. Moore walked past. The trainee "greeted" Ms. Moore and then realized that she knew Ms. Moore briefly four years ago. 2 RP at 184. The bailiff and trainee reported this to the trial court, which then informed the parties on the record and allowed the parties to ask questions or raise objections. The bailiff clarified that no jurors witnessed the interaction. Mr. Moore requested that the trainee not participate in the rest of the trial, and the trial court dismissed the trainee.

This interaction did not prejudice Mr. Moore. No jurors witnessed the trainee bailiff greeting Ms. Moore, and the trainee was dismissed from the rest of the trial at Mr. Moore's request. There is no evidence in the record that the jury knew about or was in any way influenced by the interaction. Nor is there any evidence of ex parte communication. The trial court discussed the interaction in chambers with the bailiffs, but there is no indication that any parties were present. Rather, it appears that both parties were told about the interaction simultaneously on the record. We affirm.

7

44221-3-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Hunt, J.

_____
Worswick, C.J.

8