## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59375-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| CHARLES ELI STAPLETON, | |
| Appellant. | |

CHE, J. — Charles Stapleton was convicted of vehicular homicide after he struck a car with his truck while intoxicated, killing the other driver. At his sentencing hearing, Stapleton appeared in court within a holding cell. Stapleton did not object to the holding cell, and the trial court did not make an individual inquiry into whether the restraint was necessary before imposing a sentence at the high end of the standard sentencing range.

Stapleton appeals his sentence, arguing that his restraint at sentencing was a manifest constitutional error requiring resentencing. We agree and remand for resentencing.

FACTS

One evening in June 2022, Stapleton was driving his truck along a road with a 35 miles per hour speed limit. Stapleton collided with a car driven by Roy Bugg, Jr., killing Bugg. The State's accident investigator determined that Stapleton was likely traveling between 64 and 68

miles per hour prior to braking, and 55 to 58 miles per hour at the time he collided with Bugg. A mechanical engineer also reviewed the data and estimated that Stapleton was traveling 50 to 60 miles per hour at the time he began braking and 40 to 46 miles per hour at impact.

Responding law enforcement officers noted that Stapleton smelled like alcohol. After conducting a field sobriety test, law enforcement determined that Stapleton was impaired and placed him under arrest. A toxicology test of Stapleton's blood revealed that Stapleton's blood alcohol concentration was .11 grams of ethanol per 100 milliliters of blood.

The State charged Stapleton with vehicular homicide. After the jury was unable to reach a verdict, the trial court declared a mistrial. Following a second trial, the jury found Stapleton guilty of vehicular homicide.

Stapleton appeared for sentencing from an in-court holding cell. The court did not conduct an individualized inquiry into whether it was necessary to restrain Stapleton. Stapleton argued for a mental health sentencing alternative (MHSA) based on his history of PTSD from his years serving the military as a combat medic in Afghanistan. Alternatively, Stapleton requested a low end sentence of 86 months based on the circumstances.

The trial court rejected Stapleton's request for an MHSA, noting that at the time of the accident, Stapleton had been participating in mental health court as part of an unrelated case and was prohibited from consuming alcohol. The trial court sentenced Stapleton to 114 months in prison, the high end of the standard sentence range.

Stapleton appeals his sentence.

No. 59375-1-II

ANALYSIS

Stapleton argues that the trial court violated his due process rights by failing to conduct an individualized inquiry into the use of the holding cell before his sentencing hearing. We agree.

In *State v. Luthi*, 3 Wn.3d 249, 256, 549 P.3d 712 (2024), our Supreme Court held that "a defendant's right to appear in court free from unjustified restraints is well established as a matter of federal and state due process law." *Id*. "To ensure the right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution," it is well settled that a defendant "'is entitled to appear at trial free from all bonds or shackles except in extraordinary circumstances.'" *State v. Jackson*, 195 Wn.2d 841, 852, 467 P.3d 97 (2020) (*quoting State v. Finch*, 137 Wn.2d 792, 842, 975 P.2d 967 (1999) (plurality opinion)). The right to appear in court without restraints extends to nonjury proceedings as well. *Id*. at 854.

The Supreme Court explained, "it is apparent that the in-court holding cell at the Cowlitz County Jail courtroom is a restraint on defendants that undermines the presumption of innocence, the ability to consult with counsel, and the dignity of the proceedings" even when a jury is not present. *Luthi*, 3 Wn.3d at 261. "Thus, the in-court holding cell at the Cowlitz County Jail courtroom raises the same due process concerns as other courtroom restraints, and controlling precedent recognizes that a defendant is entitled to due process at every courtroom appearance, not just jury trials." *Id*. at 263. Accordingly, the Supreme Court "reject[ed] the routine practice of requiring defendants to appear from an in-court holding cell where there has been no individualized finding that such restraint is necessary for courtroom security reasons." *Id*.

3

The Supreme Court held that the trial court's failure to conduct an individualized inquiry into the use of the holding cell was a constitutional error. *Id*. The Supreme Court further observed that "it is difficult to see how the extreme prejudice created by the in-court holding cell could be outweighed by security concerns, given that (1) the courtroom is already located within a secure jail facility and (2) courts 'must consider less restrictive alternatives before imposing physical restraints.'" *Id*. at 263 n.7 (*quoting Finch*, 137 Wn.2d at 850).

Stapleton did not object to appearing in the holding cell at sentencing. This court has discretion to "refuse to review any claim of error [that] was not raised in the trial court." RAP 2.5(a). However, a party may raise a "manifest error affecting a constitutional right" for the first time on appeal. RAP 2.5(a)(3). "In order to benefit from this exception, 'the appellant must identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights.'" *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011) (alteration in original) (internal quotation marks omitted) (*quoting State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009)).

Under *Luthi*, there is no question that Stapleton's claimed error is constitutional in nature. The question is whether the claimed error is manifest. An error is manifest if the appellant makes a plausible showing that the error resulted in actual prejudice, which means that the claimed error had practical and identifiable consequences in the trial. *Gordon*, 172 Wn.2d at 676.

Stapleton argues that he makes such a showing because the constitutional error—restraining Stapleton in the holding cell without an individualized inquiry—was open to the trial court's view during sentencing. Stapleton further contends that he has plausibly shown the

potential that his unlawful restraint prejudiced the sentencing judge because Stapleton requested an MHSA or a low end standard range sentence and the trial court instead imposed the high end of the standard range. Under these circumstances, we agree.

Although Stapleton was sentenced within the standard range, the trial court imposed a sentence at the top of the standard sentencing range. As our Supreme Court recognized in *Luthi*, the in-court holding cell created "extreme prejudice." 3 Wn.3d at 263 n.7. Given the extreme prejudice resulting from use of the in-court holding cell and Stapleton's high-end sentence, we hold that there is a plausible showing of a practical and identifiable consequence arising from the violation of Stapleton's due process rights. Therefore, Stapleton has suffered a manifest error affecting a constitutional right. We next consider whether this error was harmless.

We presume that a constitutional error prejudiced the defendant. *Gordon*, 172 Wn.2d at 676. "[T]he State bears the burden to prove beyond a reasonable doubt that the constitutional violation was harmless." *Jackson*, 195 Wn.2d at 856.

The State argues that the error is harmless beyond a reasonable doubt because Stapleton received a standard range sentence and the trial court provided sound reasons for its sentence. Although the trial court provided what the State characterizes as "sound reasons" for the high-end sentence, the State has not met its burden of showing beyond a reasonable doubt that the due process violation was harmless. Given the presumption that the constitutional error prejudiced Stapleton, and given the "extreme prejudice" of the holding cell as articulated in *Luthi*, the State does not show, based on the facts of this case, that the error was harmless beyond a reasonable doubt by merely stating that Stapleton was sentenced within the standard range and highlighting

No. 59375-1-II

the trial court's reasoning. 3 Wn.3d at 263, n.7. Accordingly, we hold that the error was not harmless.

We remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Che, J._
Che, J.

We concur:

_Lee, P.J._
Lee, P.J.

_Glasgow, J._
Glasgow, J.