900

[No. 62237-4-I. Division One. November 21, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD TREVOR DUNCALF, *Appellant*.

*Gregory C. Link* (*Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney,* and *Dennis J. McCurdy, Deputy,* for respondent.

¶1 Dwyer, C.J. — We must harmonize a jury's general verdict and special verdict where such harmonization is possible. Here, the jury's special verdict—a finding of an aggravating circumstance that authorized the imposition of an exceptional sentence—can be harmonized with the jury's general verdict convicting Richard Duncalf of a crime inferior in degree to the highest charged offense. Moreover, the absence of a jury instruction defining that aggravating circumstance is not a constitutional error that may be raised for the first time on appeal. Accordingly, we affirm.

I

¶2 Richard Duncalf inflicted serious injuries upon his roommate, Earl James Ketchum, while in a jealous rage triggered by Duncalf's mistaken belief that he had caught Ketchum engaged in sexual intercourse with Duncalf's girl friend. At the time, Ketchum and Stacy Worthington were involved in an intimate dating relationship. On the day in question, Ketchum and Worthington were having sex in Ketchum's bedroom when Duncalf barged into the room. Rather than exit sheepishly, Duncalf violently attacked Ketchum. Eventually, Duncalf looked over at Worthington. Realizing his mistake, Duncalf stated, "I thought you were my girlfriend." Report of Proceedings (RP) (June 17, 2008) at 19.

¶3 Ketchum sustained severe injuries as a result of Duncalf's attack. Duncalf had repeatedly punched Ketchum in the face with closed fists, landing at least 10 punches. Ketchum was knocked unconscious by the first few blows. The first police officer on the scene testified that he had "never seen a fist do damage like this" and likened the "severe trauma" inflicted upon Ketchum to the trauma

caused in an automobile collision. RP (June 17, 2008) at 144, 141. Upon arriving at the scene, the officer observed blood splattered on the walls and pooling on the floor. He described Ketchum as having difficulty breathing, with his eyes swollen shut and a softball-sized knot on his face.

¶4 Ketchum suffered at least eight fractures; the exact number of fractures is uncertain because some of his orbital bones were shattered. This facial trauma required surgery whereby Ketchum's jaw was realigned, titanium plates were inserted, and his jaw was wired shut for over five weeks. In addition to severe facial injuries, Ketchum sustained a fractured rib that punctured his lung, creating a pneumothorax—a potentially life-threatening condition in which air escapes from and then compresses the lung. He further sustained a fracture to the base of his skull, an injury that can lead to cranial bleeding. Over a year after the assault, Ketchum still suffered from nerve damage, which caused him to "dribble" and "drool" when he ate or slept. RP (June 17, 2008) at 92. This damage is likely permanent.

¶5 The State charged Duncalf with assault in the first degree, alleging that "with intent to inflict great bodily harm, [Duncalf] did assault another and inflict great bodily harm upon [Ketchum]." Clerk's Papers (CP) at 12; see RCW 9A.36.011(1)(c). The State additionally charged Duncalf, in the alternative, with assault in the second degree, alleging that Duncalf had intentionally assaulted Ketchum, thereby recklessly inflicting "substantial bodily harm" upon him. CP at 13-14; see RCW 9A.36.021(1)(a). In connection with the charge of assault in the second degree, the State alleged an aggravating circumstance—that the "victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of [that] offense." RCW 9.94A.535(3)(y).

¶6 The jury was instructed as to the statutory definitions of both "great bodily harm" and "substantial bodily harm." See RCW 9A.04.110(4)(c), (b). In addition, the jury

was asked, by special verdict, whether Ketchum's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of assault in the second degree. Despite the fact that the trial court noted the absence of an instruction defining "substantially exceed," neither Duncalf nor the State proposed such an instruction. Duncalf neither objected to the trial court's instructions pertaining to the alleged aggravating circumstance nor proposed any related jury instruction himself. When asked whether he objected to the trial court's decision not to provide any of the defense's proposed instructions, Duncalf's counsel replied in the negative.

¶7 After commencing deliberations, the jury inquired regarding the meaning of "substantially exceeded." The trial court responded that "[t]here is no specific, legal definition of that term. Apply the commonly held meaning to the words." CP at 392-93.

¶8 The jury acquitted Duncalf on the charge of assault in the first degree. However, the jury convicted Duncalf of assault in the second degree and found, by special verdict, that the injuries sustained by Ketchum substantially exceed the level of bodily harm necessary to satisfy the elements of that crime. Based upon the jury's finding that the State had proved the charged aggravating circumstance, the trial court imposed a sentence beyond the standard sentence range.

¶9 It is from this exceptional sentence that Duncalf appeals.

II

¶10 Duncalf contends that the trial court erred as a matter of law by imposing the exceptional sentence. He first asserts that injuries that do not rise to the level of "great bodily harm" cannot be the basis for an exceptional sentence where the crime of conviction is assault in the second degree. He then asserts that because, to convict a defendant

of assault in the first degree, the jury must find that the victim sustained "great bodily harm," and because, here, the jury acquitted him of that crime, the jury necessarily found that Ketchum's injuries did not constitute "great bodily harm." However, this assumption is unfounded. The verdicts here can be harmonized. Thus, Duncalf's claim fails.

¶11 A trial court "may impose a sentence outside the standard sentence range for an offense if it finds . . . that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. Pursuant to the 2005 amendments to the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, the severity of a victim's injuries can provide the basis for an exceptional sentence where "[t]he victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense." RCW 9.94A.535(3)(y).

¶12 Our Supreme Court recently explained the meaning of the term "substantially exceed," as set forth in RCW 9.94A.535(3)(y). In *State v. Stubbs*, 170 Wn.2d 117, 240 P.3d 143 (2010), the defendant was convicted of assault in the first degree and received an exceptional sentence based upon the severity of the victim's injuries. In order to convict Stubbs, the jury was required to find that he had inflicted " 'great bodily harm' " upon the victim of the assault. *Stubbs*, 170 Wn.2d at 119. By special verdict, the jury also found that the victim's injuries substantially exceeded the level of bodily harm necessary to satisfy the elements of the crime. *Stubbs*, 170 Wn.2d at 122. Based upon this jury finding, the trial court imposed an exceptional sentence. *Stubbs*, 170 Wn.2d at 122.

¶13 Our Supreme Court reversed Stubbs's exceptional sentence, holding that pursuant to the SRA's statutory sentencing scheme, "no injury can 'substantially exceed' the level of bodily harm necessary to satisfy the element of 'great bodily harm.' " *Stubbs*, 170 Wn.2d at 131. Rather, the court determined, one case of "great bodily harm" "is not qualitatively different than another case. Such a leap is

best understood as the jump from 'bodily harm' to 'substantial bodily harm,' or from 'substantial bodily harm' to 'great bodily harm.' That is what is meant by *'substantially exceeds.'*" *Stubbs*, 170 Wn.2d at 130. Thus, because "great bodily harm" is the highest level of bodily harm defined by our legislature, a jury finding regarding the severity of the victim's injuries cannot support an exceptional sentence where "great bodily harm" is an element of the underlying offense. *Stubbs*, 170 Wn.2d at 130-31.

¶14 Here, the trial court imposed an exceptional sentence based upon the jury's factual finding that Ketchum's "injuries substantially exceed the level of bodily harm necessary to satisfy the elements of [assault in the second degree]." RCW 9.94A.535(3)(y). In order to convict Duncalf of assault in the second degree, the jury was required to find that Ketchum's injuries constitute "substantial bodily harm." RCW 9A.36.021(1)(a). Thus, pursuant to the decision in *Stubbs*, the extent of Ketchum's injuries is a proper basis for an exceptional sentence only if those injuries constitute "great bodily harm"—the level of bodily harm greater than that which is required to satisfy the elements of assault in the second degree. 170 Wn.2d at 130-31. However, the jury acquitted Duncalf on the charge of assault in the first degree, an element of which is that the defendant inflicts "great bodily harm" on another. RCW 9A.36.011(1)(c). This verdict, Duncalf asserts, establishes that the jury found Ketchum's injuries to be insufficient to constitute "great bodily harm." This is not so.

¶15 Rather, the crimes of assault in the first degree and assault in the second degree differ not just in the severity of the bodily harm inflicted upon the victim, but also in the requisite mental state of the accused. "A person is guilty of assault in the first degree if he or she, *with intent to inflict great bodily harm* . . . [a]ssaults another and inflicts great bodily harm." RCW 9A.36.011(1)(c) (emphasis added). Assault in the second degree, however, requires only that the assault itself, not the resulting bodily harm, be intentional:

"A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree[,] . . . [i]ntentionally assaults another and thereby *recklessly inflicts* substantial bodily harm." RCW 9A.36.021(1)(a) (emphasis added).

¶16 Thus, the jury's verdicts here—both the general verdicts convicting Duncalf of assault in the second degree and acquitting him of assault in the first degree and the special verdict finding that Ketchum's injuries substantially exceed those necessary for a conviction of assault in the second degree—can be viewed as being consistent. The jury could find that Duncalf did not *intend to* inflict great bodily harm upon Ketchum, as necessary for a conviction of assault in the first degree, but that Duncalf *did inflict* such harm recklessly, thus supporting both the jury's guilty verdict and its special verdict. In other words, the jury's acquittal on the charge of assault in the first degree does not foreclose the jury's special verdict finding that Ketchum's injuries "substantially exceed" the level of bodily harm necessary to establish substantial bodily harm, as required for a conviction of assault in the second degree.

¶17 " 'Where the general verdict and the special finding can be harmonized by considering the entire record of the case, including the evidence and the instructions, it is the duty of the court to harmonize them.' " *State v. Burke*, 90 Wn. App. 378, 386, 952 P.2d 619 (1998) (quoting *State v. Eker*, 40 Wn. App. 134, 140, 697 P.2d 273 (1985)). The evidence presented at trial supports a jury finding that Duncalf inflicted the necessary bodily harm for a conviction of assault in the first degree but that he did not possess the requisite mens rea for such a conviction.[1] Thus, the general verdicts and the special verdict can be harmonized.

---

[1] It is entirely possible that in viewing the infliction of harm as having been the result of recklessness, the jury was influenced by Duncalf's mistaken perception that Ketchum was having sex with Duncalf's girl friend, rather than with Worthington.

¶18 Moreover, the severe injuries sustained by Ketchum are sufficient to constitute "great bodily harm," as required to support the exceptional sentence imposed by the trial court. In any event, Duncalf does not challenge the sufficiency of the evidence supporting the jury's special verdict finding—rather, he contends that the jury's acquittal on the charge of assault in the first degree necessarily precludes the special verdict finding altogether. To the contrary, it is the sole province of the jury to consider and weigh the evidence, and it is not the role of this court to second-guess the jury's decisions or verdicts.

¶19 The jury's verdicts authorized the sentence imposed. The trial court did not err in imposing sentence.

### III

¶20 Notwithstanding the fact that the jury's guilty verdict and special verdict authorized the exceptional sentence imposed, Duncalf suggests that the jury's special verdict finding—the finding explicitly set forth in the SRA as an aggravating circumstance authorizing the imposition of an exceptional sentence—is insufficient to support the imposition of his sentence. Rather, he suggests, the trial court erred by imposing an exceptional sentence absent a jury finding that Ketchum suffered "great bodily injury." Because neither the constitution nor a statute compels such a finding, and because, in any event, Duncalf cannot assert this purported instructional error for the first time on appeal, we disagree.

¶21 Although, generally, we do not review claims of error that were not presented to the trial court, an exception exists where the claim of error constitutes a "manifest error affecting a constitutional right." RAP 2.5(a)(3). Instructional errors are of constitutional magnitude only where the jury is not instructed on every element of the charged crime. *State v. Stearns*, 119 Wn.2d 247, 250, 830 P.2d 355 (1992). "As long as the instructions properly

inform the jury of the elements of the charged crime, any error in further defining terms used in the elements is not of constitutional magnitude." *Stearns*, 119 Wn.2d at 250.

¶22 Accordingly, our Supreme Court has recently held that an error of constitutional magnitude was not extant where the jury was not instructed as to the meaning of "deliberate cruelty" and "particular vulnerability," the statutory aggravating circumstances that, there, authorized the imposition of the defendant's exceptional sentence. *State v. Gordon*, 172 Wn.2d 671, 677-80, 260 P.3d 884 (2011). In *Gordon*, the jury was presented with the alleged statutory aggravators and found that they applied; however, the jury was not instructed further as to the meaning of the aggravating circumstances. 172 Wn.2d at 674-75. The Supreme Court determined that further instruction would be merely definitional and, thus, the purportedly erroneous instruction could not be challenged on that basis for the first time on appeal: "Further elaboration in the instructions would have been in the vein of definitional terms, and the omission of such definitions is not an error of constitutional magnitude satisfying the RAP 2.5(a) standard." *Gordon*, 172 Wn.2d at 679-80.

¶23 Similarly, here, our Supreme Court's discussion in *Stubbs* of the meaning of "substantially exceed," as employed in the statutory aggravator set forth in RCW 9.94A.535(3)(y), is simply an explanation of that aggravating circumstance. Here, the jury made the only finding necessary to authorize the sentence imposed—the finding specifically set forth by our legislature in RCW 9.94A-.535(3)(y)—that Ketchum's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of assault in the second degree. Although *Stubbs* describes what is meant by "substantially exceed"—and, in so doing, concludes that only those injuries that constitute great bodily harm "substantially exceed" substantial bodily harm—it does not create "elements" of the statutory aggravator that must be found by the jury. 170 Wn.2d at 130-31; *see Gordon*, 172 Wn.2d at 680-82.

¶24 Indeed, the jury's question to the court during deliberations—"[W]hat constitutes 'substantially exceeded' the level of bodily injury necessary to constitute substantial bodily harm?"—demonstrates that any instruction pertaining to the meaning of that term is simply a definitional instruction, not a statement of an "element" that must be found by the jury. CP at 392. In making that inquiry, the jury was requesting *a definition* of the term "substantially exceed." Accordingly, the court responded that "[t]here is no specific, legal definition of that term." CP at 393. Moreover, the jury here *was* instructed as to the definitions of both "substantial bodily harm" and "great bodily harm."

¶25 In order to authorize an exceptional sentence, the jury must find as a fact that the aggravating circumstance was proved. *See Apprendi v. New Jersey*, 530 U.S. 466, 494 n.19, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (noting that an aggravating factor is "the functional equivalent of an element"). The jury is not required, however, to find the definition of a term within that aggravating circumstance. *Gordon*, 172 Wn.2d at 679-80. Here, the jury made the only finding necessary to authorize the imposition of the exceptional sentence.

¶26 The jury's general verdicts and special verdict can be harmonized, and the jury's special verdict finding authorizes the imposition of Duncalf's exceptional sentence. Moreover, the absence of an instruction to the jury further defining the alleged aggravating circumstance does not compel the vacation of that exceptional sentence. Such a claim of error does not constitute a manifest constitutional error that may be raised for the first time on appeal, and Duncalf did not object to the instructions on this basis at trial.[2]

---

[2] Duncalf additionally contends that RCW 9.94A.535(3)(y) is unconstitutionally vague because it fails to provide a standard to govern the determination of whether a victim's injuries "substantially exceed" those necessary to satisfy the elements of the charged offense. He further asserts that his right to due process was violated because there is no objective standard for what constitutes a

¶27 Affirmed.

GROSSE, J., concurs.

¶28 Cox, J. (concurring) — I agree with the majority that Richard Duncalf cannot challenge for the first time in this appeal the trial court's decision not to instruct the jury on the definition of "substantially exceeds." The supreme court recently defined this term in *State v. Stubbs.*[3] I write separately to state my belief that such an instruction is required in future cases.

¶29 RCW 9.94A.535(3)(y) permits a judge to impose an exceptional aggravated sentence, provided a jury finds that the victim's injuries "substantially exceed" the level of bodily harm **necessary** to satisfy the **elements** of the offense.[4] Here, the level of bodily harm required for second degree assault is "substantial bodily harm."[5] To "substantially exceed" that level of harm, this jury should have been required to find that the victim's injuries met the definition of "great bodily harm."

---

"substantial and compelling" reason to impose an exceptional sentence and that his right to appeal was violated because the trial court did not articulate its reasons for the length of the sentence imposed. These claims are unmeritorious.

First, our Supreme Court has made clear that because sentencing guidelines neither define conduct nor "allow for arbitrary arrest and criminal prosecution by the State," "the due process considerations that underlie the void-for-vagueness doctrine have no application in the context of sentencing guidelines." *State v. Baldwin*, 150 Wn.2d 448, 459, 78 P.3d 1005 (2003). Duncalf has no liberty interest in being sentenced below the maximum term authorized by the jury's special verdict finding. *See Baldwin*, 150 Wn.2d at 461 (holding that because "nothing in these [sentencing] guideline statutes requires a certain outcome, the statutes create no constitutionally protectable liberty interest"). Because Duncalf has no right to be sentenced below the maximum term authorized by the jury's finding of the aggravating circumstance, no right has been violated. Moreover, " 'the sentencing court need not state reasons in addition to those relied upon to justify the imposition of an exceptional sentence above the standard range in the first instance to justify the length of the sentence imposed.' " *State v. Ritchie*, 126 Wn.2d 388, 395, 894 P.2d 1308 (1995) (quoting *State v. Ross*, 71 Wn. App. 556, 573, 861 P.2d 473, 883 P.2d 329 (1993)).

[3] 170 Wn.2d 117, 129, 240 P.3d 143 (2010).

[4] *Stubbs*, 170 Wn.2d at 129.

[5] RCW 9A.36.021(1)(a).

¶30 At this trial, the judge noted the absence of any proposed jury instruction to define "substantially exceed" and suggested that such an instruction would be necessary. Nevertheless, neither Duncalf nor the State proposed such an instruction. Moreover, Duncalf chose not to except to the court's instructions to the jury, which did not include such a definition.

¶31 During deliberations, the jury submitted the following question to the court:

> [W]hat constitutes "substantially exceeded" the level of bodily injury necessary to constitute substantial bodily harm?[6]

The court responded:

> There is no specific, legal definition of that term. Apply the commonly held meaning to the words.[7]

¶32 The jury acquitted Duncalf of first degree assault. But it convicted him of second degree assault. The jury also returned a special verdict that Earl James Ketchum's injuries "substantially exceed the level of bodily harm necessary to satisfy the elements of the crime of Assault in the Second Degree."[8] Based on this special verdict, the court imposed an exceptional sentence of 100 months of confinement.

¶33 During this appeal of Duncalf's sentence, the supreme court decided *Stubbs*. The court stated that RCW 9.94A-.535(3)(y), the post-*Blakely* amendment to the Sentencing Reform Act of 1981[9] that permits a court to impose an exceptional sentence, requires the jury to answer a different question than what was required under prior law.[10] The specific question now is whether the " 'victim's injuries substantially exceed the

---

[6] Clerk's Papers at 392.

[7] Clerk's Papers at 393.

[8] Clerk's Papers at 398.

[9] Ch. 9.94A RCW.

[10] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004); *Stubbs*, 170 Wn.2d at 128-29.

level of bodily harm **necessary** to satisfy the **elements** of the offense.'"[11]

¶34 In *Stubbs*, the crime of conviction was first degree assault. The supreme court stated that no injury short of death could exceed the definition of "great bodily harm," the level of harm necessary to prove first degree assault.[12] The court stated that the question is "whether injuries that fall **within** that definition are, nevertheless, so much worse than what is **necessary** to satisfy that element that they can be said not only to exceed but to **substantially** exceed, that minimum."[13]

¶35 The State argued in that case that injuries that fall within the definition of "great bodily harm" may still be so much worse than what is necessary to satisfy the element that they can be said to "not only exceed but substantially exceed injuries at the low end of the range" of great bodily harm.[14] The supreme court rejected this argument:

> Though injuries at the far end of the spectrum of "great bodily harm" exceed the minimum, the legislature evidently views them as differing in degree, not kind . . . . While there are different degrees of "great bodily harm," the legislature has classified injuries such as [the victim's] that create a probability of death the same as injuries [that result in] a significant permanent loss or impairment of the function of a bodily part or organ. *One case of "great bodily harm," then, is not qualitatively different than another case.* **Such a leap is best understood as the jump from** "bodily harm" to "substantial bodily harm," **or from "substantial bodily harm" to "great bodily harm." That is what is meant by "substantially exceeds."**[15]

---

[11] *Stubbs*, 170 Wn.2d at 129 (some emphasis added) (quoting RCW 9.94A-.535(3)(y)).

[12] *Id.*

[13] *Id.* (some emphasis added).

[14] *Id.*

[15] *Id.* at 130 (most emphasis added).

¶36 Here, the majority correctly concludes that in order to "substantially exceed" the bodily harm element of second degree assault—"substantial bodily harm"—the victim's injuries must meet the definition of "great bodily harm."[16]

¶37 The State argues, and the majority agrees, that "the severe injuries sustained by Ketchum are sufficient to constitute 'great bodily harm,'" as RCW 9A.04.110(4)(c) requires. Majority at 909. Perhaps they are. But we will never know because the jury in this case was never instructed to decide whether Mr. Ketchum's injuries met the definition of "great bodily harm" for purposes of the aggravating circumstance. Rather, the court instructed the jury to determine whether the injuries "substantially exceeded" those of substantial bodily harm without further definition or clarification. Presumably, the jury followed the trial court's instruction that "[t]here is no specific, legal definition of that term. Apply the commonly held meaning to the words." But, as *Stubbs* held after the trial in this case, this guidance is no longer legally correct.

¶38 In any event, Duncalf does not challenge the sufficiency of the evidence to support a finding of "great bodily harm." Moreover, he does not challenge the sufficiency of the evidence to support the jury finding in this case: that the victim's injuries "substantially exceeded" those necessary for substantial bodily harm. Thus, we are not required to examine whether the evidence in this case is sufficient to meet the proper standard.

¶39 The importance of a correct finding to support an aggravated sentence is more than a matter of semantics. In

---

[16] The three levels of bodily harm, in ascending order, are (a) "bodily harm," defined as "physical pain or injury, illness, or an impairment of physical condition"; (b) "substantial bodily harm," defined as "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part"; and *(c) "great bodily harm," defined as "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ."* RCW 9A.04.110(4) (emphasis added).

*Blakely*, the United States Supreme Court held that " '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' "[17] Under our state statutes, a jury should have the proper definition of "substantially exceed" before it when it makes the determination that an aggravating circumstance exists.[18]

¶40 With these principles in mind, I conclude that affirming the sentence in this case is proper. Duncalf's challenge comes too late for this court to provide any relief.

Review granted at 173 Wn.2d 1026 (2012).

---

[17] *Blakely*, 542 U.S. at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)).

[18] *State v. Brown*, 132 Wn.2d 529, 611, 940 P.2d 546 (1997) (a term is technical when it has a meaning that differs from common usage (citing *State v. Scott*, 110 Wn.2d 682, 694, 757 P.2d 492 (1988) (Utter, J., dissenting))).