# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 75241-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| TIANA MILIANI BOLDEN, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 25, 2016 |
| | ) | |

LEACH, J. — Tiana Bolden appeals her second degree assault conviction. For the first time, she contends that the trial court's jury instructions contained an incomplete definition of assault. Because she does not show any error, let alone a manifest constitutional error, we affirm.

## FACTS

Based on allegations that Bolden threw Markliann Bartlett to the ground, struck her repeatedly with her fists, and injured her, the State charged Bolden with second degree assault.

The evidence at trial established that Bolden and Bartlett had a longstanding romantic relationship. The incident occurred in an apartment they shared with a married couple, Elizabeth and Jacob Crouch.

According to Bartlett, the incident began with a heated argument between her and Bolden. At one point, Bolden asked Bartlett to leave because she was "going to start throwing stuff." Bartlett responded," You would do that, because you're that

immature." Fearing Bolden would start throwing things "because she'd done it before," Bartlett turned to leave. As she did so, she felt "this force" behind her "grabbing [her] clothes."

Then Bolden threw Bartlett down, straddled her stomach, and hit her approximately ten times on her chest and upper stomach with closed fists. Bolden fell forward. She flattened herself on top of Bartlett, wrapped her arms around her shoulders, and started rolling around on the ground. After about a minute, Bolden got off Bartlett and started pacing the room. She eventually pushed Bartlett to the ground again "and started to basically do the same thing that she had done before." This lasted a "few minutes."

Elizabeth and Jacob Crouch testified they were in the apartment most of that day. They did not notice anything unusual. Nor did they observe anything unusual about Bartlett the next day. Elizabeth testified that Bartlett's physical condition appeared unchanged from before the incident. Jacob noticed no impairment or strange movements, testifying that Bartlett got in and out of a vehicle without difficulty and carried a laptop bag over her shoulder.

Bartlett testified that the day after the incident, she drove Bolden to the ferry. That night, Bartlett's stepbrother, Robert Lucy, called and asked her to help him move boxes and furniture. Bartlett asked Bolden if she would help. The two of them drove to Robert's house. Bartlett testified she was unable to move heavy objects due to "a

significant amount of pain." But Robert testified that Bartlett climbed up a ladder and handed down items without difficulty.

Two days after the altercation, Bartlett was still in "a lot of pain" but went to work because she was afraid of losing her job. After work, a friend drove her to the emergency room (ER). There, a doctor encouraged her to make a police report.

Dr. Matt Hoertkorn testified about his examination of Bartlett in the ER. Bartlett told him she had been punched in the chest multiple times. Dr. Hoertkorn did not see any bruising or marks in that area, but X-rays showed four fractured ribs. He could not determine the age of the fractures.

Bremerton Police Officer Jeffrey Inklebarger described Bartlett's appearance when she reported the incident at the police station: "[s]he appeared to be in severe pain." Officer Inklebarger interviewed Bolden at her apartment. Bolden told him she "was expecting the police to show up." Officer Inklebarger read Bolden her Miranda[1] rights, which she waived. When the officer asked Bolden to describe the incident, Bolden became emotional and said she had grabbed Bartlett and then blacked out. Officer Inklebarger then arrested Bolden.

Defense investigator Chris Mace testified that Bolden told him Bartlett tried to leave during the argument. Bolden said she became distraught, lunged to keep Bartlett from leaving, and then blacked out.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The court instructed the jury that to convict Bolden of second degree assault, they had to find that Bolden "intentionally assaulted" Bartlett "and thereby recklessly inflicted substantial bodily harm." The State proposed the following instruction defining assault: "An assault is an intentional touching or striking of another person that is harmful or offensive regardless of whether any physical injury is done to the person."

Defense counsel expressed concerns about the instruction.

> [DEFENSE COUNSEL]: But I guess I would just—it's a useful instruction with the assault cases. That's what the [Washington Pattern Jury Instructions][2] tell me.
> There's a number of variations that can be used in the instruction, and Counsel has selected this one. *I'm just concerned about how it tells the jury that simply touching is an assault and concerned that they will think that that's all that's required in this case.*

> THE COURT: Well, *it requires not only a touching but that the touching be harmful or offensive.*

> [DEFENSE COUNSEL]: Right. It doesn't go to the extent of injuries and what was stated by the victim.

> THE COURT: Okay.

> [DEFENSE COUNSEL]: *I did read the WPICs, and they feel that the intention instruction—specific intent instruction is useful in that scenario.*

> THE COURT: Okay. So you're objecting to [Instruction] 9?

> [DEFENSE COUNSEL]: Yes.

> THE COURT: Okay. Any response . . . ?

> [PROSECUTOR]: Just that there is an inference that the injury could have occurred not as a result of striking but with actual touching

---

[2] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL (3d ed. 2008) (WPIC).

when the defendant rolled around with the victim on the floor and straddled her chest as well with her—with both legs.

If we just were to use "striking," it would be confusing based on the evidence that's been presented. I believe including the word "touching" is appropriate and supported by the WPICs, and I would ask the Court to instruct as the State proposes.

THE COURT: [Defense Counsel], your objection is part of our record. I'm going to permit Instruction 9 to be part of the packet.

(Emphasis added.)

In closing argument, the prosecutor focused on Bartlett's injuries and told the jury, "The State's only burden in this case is to prove that an assault occurred and that a fracture was the result of the assault." Defense counsel focused on the absence of bruising and other facts undermining Bartlett's claim that she was the victim of a violent assault. The jury found Bolden guilty as charged. She appeals.

## ANALYSIS

Bolden contends the jury instruction defining assault was "incomplete and erroneous" because it did not say that "an offensive touching must be objectively offensive and done with unlawful force." Bolden did not preserve this claim in the trial court. She cannot raise it for the first time on appeal because she does not demonstrate manifest constitutional error as required by RAP 2.5(a).

### Adequacy of Objection / Manifest Constitutional Error

"'Exceptions to the failure of the trial court to give an instruction must *clearly* apprise the trial judge of the points of law involved. Where the exception and the discussion of it does not do so, points of law or issues involved will not be considered

-5-

on appeal.'"[3] Bolden made one clear objection to the instruction defining assault, "I did read the WPICs, and they feel that *the intention instruction—specific intent instruction is useful in that scenario.*" (Emphasis added.) This objection said nothing about unlawful force or the necessity of a touching being objectively offensive. An appellate court normally "will not consider errors claimed in instructions . . . unless the trial court has had an opportunity to pass upon the asserted errors and correct them."[4]

Although an appellate court may consider manifest constitutional errors for the first time on appeal,[5] alleged errors in definitional instructions are generally not errors of constitutional magnitude.[6] Bolden fails to show any basis for concluding that the omissions from the instruction defining assault amounted to manifest constitutional error.

---

[3] State v. Fowler, 114 Wn.2d 59, 69, 785 P.2d 808 (1990) (emphasis added) (quoting Seattle v. Rainwater, 86 Wn.2d 567, 571, 546 P.2d 450 (1976)), overruled on other grounds by State v. Blair, 117 Wn.2d 479, 816 P.2d 718 (1991).

[4] State v. Robinson, 92 Wn.2d 357, 361, 597 P.2d 892 (1979); State v. Harris, 62 Wn.2d 858, 872-73, 385 P.2d 18 (1963) (defendant who objects to an instruction on one theory at trial may not make a challenge on appeal based on a new theory); accord State v. Upton, 16 Wn. App. 195, 203, 556 P.2d 239 (1976) ("An assignment of error against a given instruction, based upon a theory not presented to the trial court at the time exception is taken, will not be considered on appeal.").

[5] RAP 2.5(a).

[6] State v. Daniels, 87 Wn. App. 149, 156, 940 P.2d 690 (1997) (assault definition in WPIC 35.50 is not an element of the crime and cannot be challenged for the first time on appeal); State v. Duncalf, 164 Wn. App. 900, 911, 267 P.3d 414 (2011) (because issues involving definitional instructions are not constitutional in nature, they may not be raised for the first time on appeal); State v. Gordon, 172 Wn.2d 671, 677, 260 P.3d 884 (2011) (if instructions properly inform jury of elements of crime, any error in further defining terms used in the elements is not error of constitutional magnitude).

*Adequacy of Instruction*

Even if Bolden had made that showing, her challenges to the court's instruction would fail. She contends the instruction should have said that an assault is something done "with unlawful force." But WPIC 35.50—the pattern instruction on which the court's instruction was based—states in its note on use that the phrase "with unlawful force" should be used "if there is a claim of self[-]defense or other lawful use of force." Bolden did not make a specific claim of lawful force.[7] Her counsel focused his closing argument on whether any assault happened and if it caused Bartlett's fractures. He made no claim that Bolden's alleged punching was lawful.

Bolden also contends the instruction should have stated that a touching is offensive only if it "would offend an ordinary person who is not unduly sensitive."[8] But that was not Bolden's theory of the case. Moreover, the court's instructions did not prevent her from arguing that point to the jury. "Jury instructions are generally sufficient if they are supported by the evidence, allow each party to argue its theory of the case, and when read as a whole, properly inform the trier of fact of the applicable law."[9]

We reject Bolden's suggestion that the jury might have "concluded that an assault occurred because Ms. Bartlett was subjectively offended" when Bolden lunged

---

[7] WPIC 35.50 note on use at 548; see also State v. Calvin, 176 Wn. App. 1, 20, 316 P.3d 509 (2013) ("The term 'unlawful force' is necessary in the definition of 'assault' only when there is *a specific argument* from the defense that the use of force was somehow lawful." (emphasis added)), review granted in part on other grounds and remanded, 183 Wn.2d 1013 (2015).

[8] WPIC 35.50, at 547.

[9] Fergen v. Sestero, 182 Wn.2d 794, 803, 346 P.3d 708 (2015); see also State v. Knutz, 161 Wn. App. 395, 403, 253 P.3d 437 (2011).

at and grabbed her "and not because the touching was objectively offensive." To convict Bolden, the jury had to find that she assaulted Bartlett and *"thereby recklessly inflicted substantial bodily harm."* (Emphasis added.) Any touching causing substantial bodily harm would also be objectively offensive. In addition, nothing in the record supports Bolden's suggestion. Counsel's argument did not focus on whether an offensive touching occurred when Bolden grabbed Bartlett. Rather, consistent with the elements of the offense, it focused on whether a violent assault sufficient to cause substantial bodily harm occurred.

Finally, Bolden claims in a statement of additional grounds for review that her trial counsel originally planned to call both Bolden and Heather McDaniel to testify at trial but then changed his mind on the eve of trial. She appears to contend her counsel's decision amounted to ineffective assistance of counsel. This claim involves matters outside the record and therefore must be raised in a personal restraint petition.[10]

We affirm.

_Leach, J._

WE CONCUR:

_Spearman, J._                    _Dwyer, J._

---

[10] State v. McFarland, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995).