# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| STATE OF WASHINGTON,<br><br>        Appellant,<br><br>        v.<br><br>CHRISTOPHER ALLEN CANFIELD,<br><br>        Respondent. | DIVISION ONE<br><br>No. 77560-0-I<br><br>UNPUBLISHED OPINION<br><br>FILED: July 22, 2019 |

DWYER, J. — Christopher Canfield appeals from his conviction for assault in the second degree, asserting several errors relating to the instruction provided to the jury on the defense of lawful use of force to defend property, Instruction 15. According to Canfield, Instruction 15 (1) improperly relieved the State of its burden to disprove the defense of protection of property, (2) was incomplete and lacked clarity, and thus denied him the right to defend his property, and (3) constituted an improper comment on the evidence by the trial judge. None of his contentions merit appellate relief. We affirm.

I

In 2017, Canfield owned land, and several structures on his land, including a mobile home, two tow-behind trailers, and a camper, in Monroe, Washington. Canfield lived in the mobile home and permitted several homeless acquaintances to live in the mobile home and other structures on his property for free. While he had no formal lease agreement with any of the people he allowed to live at his

property, he established rules and conditions for the individuals he permitted to live on his property, namely, no possessing or using hard drugs and no arguing.

In January 2017, Canfield met Cheryl Boersema and she moved onto Canfield's property. Canfield explained his rules concerning hard drugs and arguing and agreed that Boersema did not have to pay any rent until she was "on her feet," at which point she would pay him $300 per month to live on his property. There was no discussion of how long Boersema would be staying on the property, and no written lease. Canfield, however, considered their discussion about his rules and her staying on the property to be a verbal contract. Boersema, on the other hand, did not believe that she and Canfield had entered into any specific agreement about the terms of her stay on his property.

At approximately 10:30 p.m. on June 18, 2017, Canfield awoke to noise on his property, and was told by a roommate that Boersema "had dope and wasn't sharing." Upon hearing this, Canfield thought "Cheryl is breaking the rules and I'm going to have to ask her to leave." At this time, Boersema was staying in the camper and had a friend, John Fulcher, visiting. Canfield walked out to the camper from his mobile home, observed small bags of what he believed were methamphetamines in the camper,[1] seized the bags, and, screaming and using expletives, told Boersema and Fulcher that he did not tolerate drugs on his

---

[1] It was later discovered that the baggies contained only marijuana, not methamphetamines. Canfield did not consider marijuana to be a violation of his ban on hard drugs and permitted its use on the property.

2

property and that they had to leave the property. Canfield then returned to the mobile home and waited for Boersema and Fulcher to leave.

Approximately 10 minutes later, Boersema and Fulcher were still in the camper on Canfield's property and Canfield believed that they were not planning to leave. Grabbing a machete to protect himself,[2] he returned to the camper to again tell Boersema and Fulcher to leave the property.

Although the exact details of the encounter were later disputed at trial,[3] all parties agreed that Canfield went back to the camper and, still screaming and swearing, ordered Boersema and Fulcher to leave immediately. Boersema and Fulcher immediately left the property.

Soon thereafter, Boersema reported the encounter to the police. Deputy Christopher Leyda responded to the scene, and Canfield turned over the baggies of what he believed to be methamphetamines, showed Deputy Leyda his machete, and denied assaulting Boersema or Fulcher. Deputy Leyda arrested Canfield.

The State charged Canfield with one count of assault in the second degree and one count of harassment. At trial, Canfield proposed an instruction on defense of self, defense of others, and defense of property. The State objected to the court instructing the jury on defense of property, arguing that if the court did so instruct the jury, the court should also instruct the jury on certain

---

[2] Canfield testified at trial that Fulcher was significantly younger and larger than him and that he was afraid of Fulcher and Boersema because they outnumbered him and appeared intoxicated.

[3] Canfield testified that he never raised the machete from his side or threatened to use it on Boersema or Fulcher. Boersema testified that he raised the machete to both her and Fulcher's throats and threatened to cut their heads off.

portions of Washington's Residential Landlord-Tenant Act of 1973 (RLTA), chapter 59.18 RCW, to allow the jury to decide whether a residential agreement existed between Canfield and Boersema, and thus whether Canfield had the right to remove Boersema from his property without a court order. [4]

Canfield's attorney objected, arguing that the evidence did not support giving such instructions and that the State's proposed instructions on the RLTA did not make it clear to the jury that Canfield could not rely upon the defense of property as a defense if there was a landlord-tenant relationship between Canfield and Boersema. When the trial judge asked Canfield's attorney for an alternative instruction that might be clearer, she stated, "I've outlined the issue that I think the jury needs to be instructed on, but I think the onus is on the State to craft the instruction."

After further discussion, the State offered a modified form of the standard defense of property instruction as a solution to the issue raised by Canfield's attorney. This modified instruction combined the State's proposed instructions on the RLTA with Canfield's defense of property instruction, inserting a definition of "tenant" and "rental agreement" into the defense of property instruction and explaining that landlords cannot evict tenants without a court order.

As the trial court considered whether to give the State's proposed modified defense of property instruction, the court specifically asked Canfield's attorney if she had any objections to, or wanted to present any argument about, the wording

---

[4] RCW 59.18.290(1) states: "It is unlawful for the landlord to remove or exclude from the premises the tenant thereof except under a court order so authorizing."

of what became Instruction 15. Although she objected generally to the issuance of a defense of property instruction setting forth any provisions of the RLTA,[5] Canfield's attorney declined to be heard on the wording of what became Instruction 15.[6] Thus, the trial court gave the following instruction to the jury as Instruction 15:

> It is a defense to a charge of assault in the second degree that the force offered to be used was lawful as defined in this instruction.
> The offer to use force upon or toward the person of another is lawful when offered by a person who reasonably believes that he is about to be injured or by someone lawfully aiding a person who he reasonably believes is about to be injured in preventing or attempting to prevent an offense against the person, and when the force is not more than is necessary.
> The offer to use force upon or toward the person of another is lawful when offered in preventing or attempting to prevent a malicious trespass or other malicious interference with real or personal property lawfully in that person's possession, and when the force is not more than is necessary. An owner or possessor of real or personal property has the right to prevent malicious trespass or malicious interference of property by use of force as indicated in this instruction. Trespass occurs when a person enters or remains on premises unlawfully, that is when that person is not then licensed, invited, or otherwise privileged to so enter or remain. If a landlord-tenant rental agreement exists, it is unlawful for a landlord to remove or exclude from the premises the tenant thereof except under a court order so authorizing. It is unlawful for the tenant to hold over in the premises or exclude the landlord therefrom after the termination of the rental agreement except under a valid court order so authorizing. A tenant is a person who is entitled to occupy a dwelling unit primarily for living or dwelling purposes under a rental agreement. A rental agreement is an agreement which

---

[5] At trial, Canfield's attorney asserted that the evidence was insufficient to require the inclusion of any provisions of the RLTA. Canfield does not make this assertion on appeal.

[6] Canfield's attorney did, however, later seek to add additional language to what became Instruction 15, but not any language relevant to the issues presented on appeal. The only modification Canfield's trial attorney sought was to include RCW 59.18.290(2) in the instruction rather than just RCW 59.18.290(1), which required adding the following text: "It is unlawful for the tenant to hold over in the premises or exclude the landlord therefrom after the termination of the rental agreement except under a valid court order so authorizing." The trial court included this language in Instruction 15. Canfield's attorney did not propose any other changes to the wording of Instruction 15.

5

establishes or modifies the terms, conditions, rules, regulations, or any other provisions concerning the use and occupancy of a dwelling unit.

The person offering to use the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.

The State has the burden of proving beyond a reasonable doubt that the force offered to be used by the defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty as to this charge.

The jury found Canfield guilty of assault in the second degree but acquitted him on the harassment charge. Canfield now appeals from his conviction for assault in the second degree.

II

Canfield contends that the trial court erred when it gave Instruction 15. According to Canfield, Instruction 15 (1) improperly relieved the State of its burden to disprove the defense of protection of property, (2) was incomplete and lacked clarity, and thus denied him the right to defend his property, and (3) constituted an improper comment on the evidence by the trial judge. None of his contentions have merit.

A

Canfield first contends that Instruction 15 improperly relieved the State of the burden to disprove Canfield's defense that he was entitled to use force to defend his property.

Canfield is incorrect. Instruction 15, after outlining the various situations in which the use of force or offering to use force against another is justified, states:

The State has the burden of proving beyond a reasonable doubt that the force offered to be used by the defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty as to [the assault] charge.

Instruction 15 thus plainly explained that the prosecutor had the burden of proving, beyond a reasonable doubt, the absence of the defense of protection of property. Canfield's contention fails.

B

Canfield next contends that the inclusion in Instruction 15 of incomplete portions of the RLTA denied him his right to act in defense of his property. This is so, Canfield asserts, because the trial court did not give definitional instructions for the terms "landlord" and "dwelling unit" and because the inclusion of portions of the RLTA in Instruction 15 made the instruction on defense of property unclear. Canfield specifically asserts that the instruction failed to make clear what was required to form a rental agreement, failed to clarify that the RLTA does not criminalize self-help evictions, and failed to explicitly state that defense of property is not available as a defense to a landlord who removes a tenant without a court order. But Canfield did not properly preserve any of these claims of error for appeal.

"Under RAP 2.5(a), 'appellate courts will not consider issues raised for the first time on appeal.'"[7] State v. Fluker, 5 Wn. App. 2d 374, 396, 425 P.3d 903

---

[7] "[A] claim of error may be raised for the first time on appeal if it is a manifest error affecting a constitutional right." State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007) (citing RAP 2.5(a)(3)). But Canfield does not contend that any of his assignments of error amount to manifest error affecting a constitutional right. Indeed, definitional instructions do not qualify as such. State v. Stearns, 119 Wn.2d 247, 250, 830 P.2d 355 (1992); State v. Duncalf, 164 Wn. App. 900, 911, 267 P.3d 414 (2011), aff'd, 177 Wn.2d 289, 300 P.3d 352 (2013).

(2018) (quoting State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007)). "The rule reflects a policy of encouraging the efficient use of judicial resources. The appellate courts will not sanction a party's failure to point out at trial an error which the trial court, if given the opportunity, might have been able to correct to avoid an appeal and a consequent new trial." State v. Scott, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). This general rule is amplified by CrR 6.15(c), which requires trial counsel to "state the reasons" for any objection. Our Supreme Court has cited this rule when refusing to review "asserted instructional errors to which no meaningful exceptions were taken at trial." Scott, 110 Wn.2d at 685-86.

First, Canfield did not argue at trial that Instruction 15 was incomplete because it did not define "landlord" or "dwelling unit." Nor did he present any alternative instructions to the trial court that included definitions of "landlord" and "dwelling unit." It is a longstanding rule that a party may not raise a claim of error regarding the absence of a definitional instruction for the first time on appeal. Scott, 110 Wn.2d at 691. Therefore, we decline to consider Canfield's argument that the trial court erred when it did not give definitional instructions for the terms "landlord" and "dwelling unit" and that the instructions given were thus "incomplete."

Second, Canfield also asserts that the inclusion of portions of the RLTA in Instruction 15 made the defense of property instruction unclear to the jury because the instruction failed to make clear what was required to form a rental agreement, failed to clarify that the RLTA does not criminalize self-help evictions, and failed to explicitly state that defense of property is not available as a defense

to a landlord who removes a tenant without a court order.[8] But Canfield did not make any of these arguments to the trial court.

At trial, Canfield did not propose any instructions adding to the definition of rental agreement, nor did he protest that the definition included in Instruction 15 was insufficient. Thus, as with his claims of error regarding the definitions of "landlord" and "dwelling unit," Canfield did not preserve this claim of error for appeal.[9] Scott, 110 Wn.2d at 691. Similarly, Canfield never objected to Instruction 15 on the ground that it failed to clarify that the RLTA is a civil statute, nor did he propose an alternative instruction that would inform the jury of the civil nature of the RLTA prohibition against self-help evictions.

Canfield's final explanation for his assertion that Instruction 15 was unclear—that the instruction fails to explicitly state that defense of property is not an available defense to a landlord who removes a tenant without a court order— was also not properly preserved for appeal. When the parties first presented proposed instructions to the trial court, Canfield's attorney argued that the State's proposed instructions would not make clear to the jury the law pertaining to when Canfield could not rely upon the defense of property as a defense should the jury find that there existed a landlord-tenant relationship between Canfield and Boersema. But when the trial judge asked Canfield's attorney for an alternative

---

[8] To be clear, Canfield does not dispute on appeal that the evidence supported an instruction informing the jury about legal limitations on a landlord's ability to exclude tenants from real property but, rather, asserts that the judge provided unclear information about the law to the jury.

[9] Canfield is also incorrect that Instruction 15 failed to explain what is required to form a rental agreement. Indeed, rental agreement is explicitly defined in the instruction as "an agreement which establishes or modifies the terms, conditions, rules, regulations, or any other provisions concerning the use and occupancy of a dwelling unit."

9

instruction, she asserted, "I've outlined the issue that I think the jury needs to be instructed on, but I think the onus is on the State to craft the instruction."

After further discussion, the State offered what became Instruction 15. As the trial court considered whether to give Instruction 15, the court specifically asked Canfield's attorney if she had any objections or wanted to present any argument about the wording of Instruction 15. Canfield's attorney declined to be heard on the wording of Instruction 15.[10]

Canfield's attorney did not except to the wording of Instruction 15 on the basis now asserted. She did not request an alternative instruction setting forth additional language pertaining to the effect of a landlord-tenant relationship on Canfield's claim of defense of property. Because Canfield's attorney declined to object to the wording of Instruction 15 or to present any alternative instruction setting forth the language Canfield now asserts should have been included, Canfield did not preserve this claim of error for appeal.

C

Finally, Canfield asserts that Instruction 15 conveyed the trial judge's personal opinion of the evidence to the jury. We disagree.

The Washington Constitution prohibits a judge from expressing, to the jury, his or her opinion about the merits or facts of a case. CONST. art. IV, § 16. "But an instruction that states the law correctly and is pertinent to the issues raised in the case does not constitute a comment on the evidence." State v.

---

[10] Although, as already noted herein, Canfield's attorney did later seek to add language to Instruction 15, specifically language from RCW 59.18.290(2). The trial court included this language in Instruction 15. Canfield's attorney did not propose any other changes to the wording of Instruction 15.

Winings, 126 Wn. App. 75, 90, 107 P.3d 141 (2005) (citing State v. Johnson, 29 Wn. App. 807, 811, 631 P.2d 413 (1981)).

Canfield asserts that Instruction 15 is analogous to a first degree burglary to-convict instruction given in State v. Levy, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006), which provided that the State was required to prove the defendant had entered or remained unlawfully in a "building, to-wit: the building of Kenya White." Therein, the defendant was convicted of burglary in the first degree. Levy, 156 Wn.2d at 716. In reversing the conviction on appeal, the Levy court explained that the jury was required to determine whether Kenya White, the victim, lived in a building and the "to-wit: the building of Kenya White" part of the instruction improperly implied that the evidence showed that the structure Kenya White lived in was a building. 156 Wn.2d at 721.

Levy is inapposite. Instruction 15 does not include any language similar to the "to-wit" instruction in Levy. Furthermore, at trial, defense counsel stated that she considered the law set forth in Instruction 15 to be accurate. On appeal, Canfield does not assert that any of the law set forth in Instruction 15 is inaccurate. Accurately setting forth the law is not an improper comment on the evidence. Thus, the trial judge did not improperly comment on the evidence in Instruction 15.

Affirmed.

WE CONCUR:

_____

Chun, J.

_____

_____

Dwyer, J.

_____